# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| **IN RE LAMBERT OIL COMPANY, INC.,** | Bankr. Case No. 03-01183-WAS |
| Debtor. | |

| | |
|---|---|
| **MOUNTAIN EMPIRE OIL COMPANY, INC., ET AL.,** | |
| | Case No. 1:07CV00005 |
| Appellant and Cross-Appellees, | |
| v. | **OPINION** |
| **WILLIAM E. CALLAHAN, JR., TRUSTEE,** | By: James P. Jones<br>Chief United States District Judge |
| Appellee and Cross-Appellant. | |

*Rick J. Bearfield, Johnson City, Tennessee, and Thomas A. Leggette, Roanoke, Virginia, for Appellant and Cross-Appellees; Lori D. Thompson, LeClair Ryan Flippin Densmore, Roanoke, Virginia, for Appellee and Cross-Appellant.*

In this bankruptcy appeal, the tenant of real estate in the bankruptcy estate contests a judgment in the trustee's favor for the fair market value of the tenant's occupancy. In a cross-appeal, the trustee contends that the bankruptcy court erred in not entering the judgment jointly and severally against another party and in

determining the rate of prejudgment interest. I find that the decision by the court below has sufficient support in the record and thus affirm the judgment.

I

Lambert Oil Company, Inc. ("the Debtor") filed a petition under Chapter 11 of the Bankruptcy Code on March 24, 2003. The bankruptcy court converted the bankruptcy case to Chapter 7 on September 16, 2003. William E. Callahan, Jr., ("the Trustee") was appointed trustee.[1]

On November 30, 2004, the Trustee initiated an adversary proceeding seeking to recover the fair market rental value for certain convenience stores previously owned by the Debtor. After denial of the defendants' motion for summary judgment on May 8, 2006, trial was held before the bankruptcy court (William F. Stone, Jr., J.) on October 18-19, 2006. Following that trial, and for the reasons set forth in an opinion dated November 24, 2006, the bankruptcy court entered judgment in favor of the Trustee against defendant Mountain Empire Oil Company, Inc. ("MEO") in the amount of $551,993.55. The bankruptcy court dismissed the action against two other

---

[1] The court has earlier decided appeals involving this bankruptcy case. *See Lambert v. Callahan (In re Lambert Oil Co.)*, 347 B.R. 508 (W.D. Va. 2006); *Callahan v. Petro Stopping Center #72 (In re Lambert Oil Co.)*, 347 B.R. 173 (W.D. Va. 2006).

affiliated defendants, Quality Properties, L.P. ("Quality"), and S&T Investment Company, LLC ("S&T").

MEO filed a timely notice of appeal to this court from the judgment of the bankruptcy court and the Trustee cross-appealed. The issues have been briefed and argued and are ripe for decision. This court has jurisdiction pursuant to 28 U.S.C.A. § 158(a) (West 1993 & Supp. 2007).

II

A district court reviews the factual finding of a bankruptcy court under a clearly erroneous standard. *See* Fed. R. Bankr. P. 8013. Accordingly, all factual findings of the bankruptcy court must be upheld unless after reviewing the record below, this court is "left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). In contrast, a district court must review a bankruptcy court's decisions of law de novo. *Resolution Trust Corp. v. Murray (In re Midway Partners)*, 995 F.2d 490, 493 (4th Cir. 1993).

The basic facts are not in dispute. On June 29, 2004, the Trustee, in the course of his administration of the Debtor's estate, and with the permission of the bankruptcy court, sold two convenience stores that had been owned by the Debtor. One of the

stores was located in Bristol, Virginia, and the other in Jonesborough, Tennessee. The Bristol store was conveyed to one of the defendants below, Quality, and the Jonesborough store was conveyed to defendant S&T. These same stores had been the subject of a written Contract of Purchase and Sale entered into by the Debtor in 2002, prior to bankruptcy.

Quality, S&T, and MEO are owned and controlled by Warren K. Broyles and his wife and children. Broyles is the managing partner of Quality and the president of MEO. These entities are in the convenience store business, with MEO normally being the operating arm and Quality and S&T owning or leasing the property used in the business. During the events described in this case, attorney Harry Williams represented all of these entities.

This 2002 contract had a number of deficiencies. In addition to the Debtor, the parties named were Quality and MEO, but MEO did not sign the contract and had no stated obligations under its provisions. The contract provided that Quality would "take over" operation of the stores prior to the closing—to be held in ninety days—but did not specify the obligations of the parties in the event, as happened, that the closing did not occur but MEO remained in possession. Moreover, shortly thereafter MEO and the Debtor entered into a written Management Contract by which

-4-

MEO operated the Jonesborough store for a period of one year, subject to termination on ten days notice.

Under the Contract of Purchase and Sale, Quality was to pay to the Debtor prior to closing a "daily rent" equal to the prorated amounts of the mortgage and equipment lease installments and the Debtor was to keep these debts current up to closing, when they would be assumed by the purchaser. The agreement did not specify when such rent would be due and payable, but did provide that the purchase price would be reduced by the amounts paid. Under the Management Contract, MEO was to pay the Debtor the same amounts as to the Jonesborough store, designated as "consideration" rather than rent. In fact, MEO, and not Quality, made all payments for both stores on a monthly basis to the Debtor through September of 2002. Thereafter, no further payments were made.

MEO remained in possession of the two stores for the next twenty months, keeping for itself all of the revenue generated from the use of the properties, even after the Debtor made its bankruptcy filing, and up until the Trustee conveyed the properties to Quality and S&T.

During the Chapter 11 phase of the bankruptcy proceeding, there were negotiations by the Debtor for a new agreement, but it was never consummated. After the case was converted to Chapter 7, the Trustee continued negotiations with

the parties for the sale of the properties, which included discussions over a claim for rent. Finally, in June of 2004, the bankruptcy court approved the sale of the two stores and deeds were delivered to the purchasers. These deeds made no mention of any claim for rent, or of any reservation by the Trustee of such a claim.

In his action below, the Trustee claimed that he was entitled to the fair market rental value of the properties from October 1, 2002, the date MEO stopped paying the Debtor, to June 28, 2004, the day before the conveyances by the Trustee of the properties to the new owners. The defendants asserted in opposition, among other things, that (1) there was no express or implied agreement to pay rent to the Trustee; (2) that the unconditional conveyances operated to divest the Trustee of any such claim; and (3) there was insufficient evidence of damages.

Based on the evidence at trial, the bankruptcy court found that (1) the possession of the properties by MEO created an obligation by it to pay reasonable compensation for such use and occupancy; (2) the parties did not intend to extinguish the Trustee's claim by the conveyances of the properties; (3) the rent claimed by the Trustee had accrued at the time of the conveyances, and thus was not assigned by operation of law to the purchasers of the properties; (4) the Trustee's claim is not affected by the Trustee's failure to assume the contracts in question; (5) the court's order specifying that the sale would be free and clear of liens and claims did not apply

to the Trustee's claim for accrued rent; (6) the Trustee's claim is enforceable only against MEO; (7) the fair market rental value of the properties was equal to the amount set forth in the Contract of Purchase and Sale, which was $725.56 per day; and (8) the Trustee was entitled to prejudgment interest on the amount awarded at an annual rate of six percent.

III

Unless agreed otherwise, the use of property belonging to another with that person's consent, "implies an agreement by the tenant to pay the fair rental value of the premises." 49 Am. Jur. 2d *Landlord and Tenant* § 548 (2006).[2] The bankruptcy court's finding that MEO occupied such a position is unassailable. There was sufficient evidence that the temporary possession granted by the 2002 Contract of Purchase and Sale had expired. Any sale under the terms of that agreement had been repudiated by the parties, at least by their conduct, and MEO was in sole possession of the properties with the knowledge and consent of the Debtor and later, of its Trustee in bankruptcy.

---

[2] The Contract of Purchase and Sale and the Management Contract both provided that Tennessee law should be applied, although one of the convenience stores is located in Virginia and one in Tennessee. However, the parties have not contended, nor is it apparent, that any local difference in law changes the result in this case.

-7-

Moreover, the bankruptcy court was certainly correct in holding that the later sale of the properties to Quality and S&T was not intended to extinguish the Trustee's claim. The evidence showed that the Trustee and Harry Williams, the then-counsel for the defendants, negotiated into the spring of 2003 over the possible sale of the properties coupled with the release of the Trustee's rent claim, but without success. The Trustee then located another potential purchaser, Rogers Petroleum. Since this purchaser would obviously not be involved in any rent claim, that issue "came off the table" and Williams thereafter concentrated on making a bid to the Trustee without any reference to the rent claim. As Williams testified below:

> Q. But at some point in time during the bidding process with [the Trustee] the release of the rental obligation was taken off the table and was no longer part of the terms of the offer that was being made for the purchase of the property. Isn't that true?
>
> . . . .
>
> A. When they redid the Rogers Contract the release provision disappeared.
>
> Q. And from that point forward, the release of the rent was no longer part of the understanding of what was going to happen upon the acquisition.
>
> A. It wasn't in the contract. And I assumed that we were going to get the same deal that Rogers was going to get.
>
> Q. Rogers didn't owe any rent, correct?

-8-

> A. Well, I understand, but, I mean, as far as bidding is concerned, my understanding was that it was just – all we were talking about was dollars. In other words, we couldn't have any provisions about anything other than just dollars, so we just started talking about dollars.
>
> Q. And the release of the rental obligations was no longer included in the . . .
>
> A. Right. The contract . . .
>
> Q. . . . – the dialogue.
>
> A. . . .– in the contract that [the Trustee] drew up, it didn't have any reference to any releases or anything.

(Williams Dep. 18-19.)

To make matters even clearer, when the parties finally reached agreement on a sale by the Trustee, they also entered into a First Amendment to Asset Purchase Agreement, which specifically stated that while the purchaser was not liable for certain claims related to the property,

> [t]he foregoing exclusion of liability is applicable only to the liabilities of Lambert Oil Company's ownership or occupancy of the Purchased Assets and shall not operate as a discharge or release of any liability incurred by the Purchaser as a result of the Purchaser's occupancy and use of the Purchased Assets.

(Pl.'s Ex. 16, § 2.2.) This provision was added at the request of counsel for the Debtor's mortgage lender, who wanted to make plain that any rent claim was excluded from the transaction.

-9-

Moreover, even after the transaction was closed, the Trustee and Williams negotiated over the rent claim, with no contention by Williams that it had been extinguished.

Under the facts, the relationship between the parties here created a tenancy at will, ended by the conveyance of the property. *See* 2 Powell on Real Property § 16.05[1] (Michael Allan Wolf, ed., 2000) (describing tenancy at will as a tenancy with the mutual consent of the parties, without a designated period of duration, usually the product of judicial inference from a particular situation). The bankruptcy court was thus correct in deciding that MEO's obligation to pay reasonable compensation for its occupancy had accrued and was not transferred as a matter of law to the purchasers of the properties.[3]

---

[3] The bankruptcy court looked to the wording of the Contract of Purchase and Sale providing for payment of "daily rent," in order to conclude that MEO's obligation had accrued at the time of the sale by the Trustee, even though in practice MEO paid rent to the Debtor for five months (until it stopped) on a monthly in arrears basis. (Op. Nov. 24, 2006, at 17-19.) As discussed hereafter, I think it was appropriate to look to the provisions of this agreement as evidence of the fair market rental value, but otherwise I think it is a more correct application of the facts found by the bankruptcy court to conclude that there was simply no nonaccrued obligation due by MEO once the implied tenancy at will ended with the sale of property. Since a tenancy at will is usually, as here, created by legal implication, the conveyance of the property by the landlord generally terminates it. *See* 2 Powell on Real Property § 16.05[3]. Moreover, because of the affiliation between the defendants, represented by counsel jointly in the transactions, it was clearly understood that with the sale of the property by the Trustee, any tenancy by MEO was ended, even though it might be renewed in some future intra-enterprise relationship between the defendants.

For all of these reasons, MEO's assignments of error to the bankruptcy court's decision as to its liability are without merit. In addition, MEO's arguments disputing the bankruptcy court's calculation of damages are unavailing. It was not clearly erroneous for that court to find that the amounts actually paid by MEO to the Debtor under the abandoned Contract of Purchase and Sale and Management Contract was the best evidence of fair market value. The defendants offered no different evidence. Contrary to the appellant's argument, and as stated by the bankruptcy court,

> the use of such contracts to establish a rental rate is not equivalent to an acceptance of the benefits of such contract accompanied by a refusal to accept their burdens. Their use is for the sole purpose of establishing the fair rental value of premises of which MEO remained in full possession and enjoyment after its contractual rights to do so expired, in the absence of other evidence from the parties establishing any rental value during the period of holding over different than what they agreed to originally.

(Op. Nov. 24, 2006, at 26.)[4] It is true, of course, that the "rent" provided for in the Contract of Purchase and Sale was equal to the debt service on the properties, and an argument can be made that such payment was more appropriate where the tenancy was in anticipation of a sale, as contemplated by the Contract of Purchase and Sale.

---

[4] There was no reversible error by the bankruptcy court in admitting the testimony of an expert, Timothy Domain, offered by the Trustee on the question of damages. The bankruptcy court expressly rejected the opinion of that witness. (*Id.* at 6-7.) The appellant's contention that the bankruptcy court improperly took judicial notice of certain facts in its damages determination is likewise without merit

-11-

Nevertheless, there was no evidence that it was unreasonable to use the cost of financing in determining a fair rent in other situations.

Finally, it is clear that the bankruptcy court was within its discretion in awarding prejudgement interest. *See Hitachi Credit Am. Corp v. Signet Bank*, 166 F.3d 614, 633 (4th Cir. 1999).

IV

The Trustee, as cross-appellant, makes two arguments.

First, the Trustee contends that the bankruptcy court erred in finding that Quality was not jointly and severally liable with MEO for the fair market value of the occupancy by MEO of the two properties. The Trustee's reasoning is as follows: (1) it should be presumed that the lease arrangement between the Debtor and Quality set forth in the Contract of Purchase and Sale was assigned to MEO; (2) the rental provisions of that contract remained "in full force and effect"; (3) MEO is thus liable under that contract for the unpaid rent; and (4) Quality, as the original lessee, also remains liable. Central to this argument is the Trustee's contention that the bankruptcy court's finding that the Contract of Purchase and Sale "was terminated or expired . . . is clearly erroneous." (Trustee's Br. 46.)

-12-

I find that the bankruptcy court's findings in this regard were supported by the facts in evidence and were not erroneous. In this case, as with other complex business transactions brought before the bankruptcy court for resolution, it was required to determine the parties' intent on the basis of often incomplete and inconsistent evidence and documentation. With this in mind, I agree that the facts show that the Contract of Purchase and Sale "had failed of its essential purpose" (Op. Nov. 24, 2006, at 23) and thus had "expired" (*id.* at 27).[5]

In his other argument, the Trustee contends that the prejudgment annual interest rate applied by the bankruptcy court was erroneous. The bankruptcy court applied the six percent rate in effect in Virginia on the date the judgment was entered. The Trustee argues that the higher rate of nine percent per annum in effect prior to July 1, 2004, should be applied to those portions of the judgment representing amounts accrued before that date.

I analyzed and rejected the same argument by the Trustee in a prior appeal in this bankruptcy case, including his assertion that he had a substantive right to the

---

[5] It is true that viewed out of context, some portions of the bankruptcy court's opinion indicate that MEO's liability was premised on the Contact of Purchase and Sale. For example, the court stated that it "concludes that MEO is obligated under the terms of the Contract of Purchase and Sale to pay rent" to the Trustee. (Op. Nov. 24, 2006, at 22.) However, viewed as a whole, it is apparent that the bankruptcy court determined that MEO's liability was as a tenant implied at law, responsible for the reasonable value of its occupancy, and the court utilized the Contract of Purchase and Sale as evidence of damages.

-13-

higher rate of interest. For the reasons stated there, *Lambert v. Callahan (In re Lambert Oil Co.)*, 347 B.R. at 516-17, I will uphold the ruling of the bankruptcy court.

V

For these reasons, the judgment of the bankruptcy court will be affirmed. A separate judgment will be entered herewith.

DATED: July 24, 2007

/s/ JAMES P. JONES
Chief United States District Judge